## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                          Case No. 20-32131-WRS
                                                               Chapter 13

DARYL MCLEMORE,

      Debtor.

## MEMORANDUM DECISION

This Chapter 13 bankruptcy case is before the Court on six separate motions: (1) Trustee's Motion to Dismiss with Prejudice and Bar to Refiling (Doc. 45); (2) Trustee's Motion to Examine the Debtor's Transactions with Attorneys and Motion to Examine Attorney Fees (Doc. 46); (3) Debtor's Motion to Modify Chapter 13 Plan Post Confirmation (Doc. 51); (4) Application by Debtor to Employ Special Counsel, *Nunc Pro Tunc*, seeking to employ Benjamin E. Harrelson of Alexander Shunnarah Injury Lawyers, P.C. (Doc. 52); (5) Motion to Approve Settlement filed by Benjamin Harrelson with Shunnarah Injury Lawyers (Doc. 53); and (6) Application for Approval of Attorney Fees and Expenses filed by Benjamin Harrelson with Shunnarah Injury Lawyers (Doc. 54). The Court held hearings on these matters on September 30, 2021 and November 18, 2021. Following the hearings, the Court took these matters under advisement and allowed additional time for the parties to file briefs which the parties have now filed. (Docs. 72, 82, 83 and 84). For the reasons set forth below, upon consideration of the motions, supplemental documents, briefs, and arguments of counsel, the Court finds as follows: Trustee's Motion to Examine Transactions is GRANTED; the Application to Employ Special Counsel *Nunc Pro Tunc* is DENIED; the Motion to Approve Settlement is GRANTED in part; and the Application for Approval of Attorney Fees and Expenses is DENIED; Debtor's Motion to Modify is GRANTED; and Trustee's Motion to Dismiss is DENIED without prejudice.

# I. Facts

Debtor, Daryl McLemore filed a petition under Chapter 13 of the Bankruptcy Code in this Court on October 13, 2020. (Doc. 1). Debtor's Chapter 13 plan proposed to pay a "POT" of $5,075.00 to unsecured creditors. (Doc. 4). On December 8, 2020, Debtor filed an amended plan to disclose a pending personal injury claim and to provide that any unexempt proceeds would be paid to the Trustee for the benefit of unsecured creditors. (Doc. 23). Debtor subsequently amended the plan on December 10, 2020, but the provisions relating to Debtor's potential personal injury claim were not changed. (Doc. 27). On December 11, 2020, Debtor filed a Motion for Authority to Substitute Collateral and to Use Cash Collateral wherein Debtor noted he had been injured in a motor vehicle accident, was considering pursuing a personal injury claim, and that the plan had been amended to reflect that any unexempt proceeds from the personal injury claim would be paid to the Trustee. (Doc. 30). Debtor's amended plan was confirmed on December 24, 2020. (Doc. 34).

On July 28, 2021, Debtor amended Schedules A/B to provide for the personal injury cause of action by stating as follows:

> Injury claim: Debtor was involved in an automobile accident in December 2020 and is pursuing a claim. He is represented by the Alexander Shunnarah firm in Birmingham, AL. Debtor understands any non-exempt proceeds shall be turned over to the Trustee for payment to unsecured creditors.

(Doc. 44). Debtor also amended Schedule C to claim a $5,000.00 exemption under ALA. CODE §§ 6-10-6 & 6-10-12 for the pending cause of action. (Doc. 44). On September 7, 2021, Trustee filed a Motion to Dismiss with Prejudice and Bar to Refiling and a Motion to Examine the Debtor's Transactions with Attorneys and Motion to Examine Attorney Fees to probe Debtor's

-2-

transactions with Benjamin Harrelson ("Harrelson") and Alexander Shunnarah Injury Lawyers ("Shunnarah Firm") and to examine the attorney fees paid to the Shunnarah Firm. (Docs. 45 & 46). In its motions, Trustee asserts that, on August 6, 2021, it learned from Harrelson with the Shunnarah Firm that the personal injury claim had settled in June 2021 in the amount of $40,000.00 and that net proceeds in the amount of $16,788.26 had been disbursed to Debtor instead of being turned over to the Trustee as provided for in Debtor's confirmed plan. (Docs. 45 & 46). On September 16, 2021, Debtor amended Schedules A/B to reflect the $16,788.26 Debtor received from the settlement funds. (Doc. 50). Debtor also amended Schedule C to claim a $6,490.00 exemption of the settlement proceeds under ALA. CODE §§ 6-10-6 & 6-10-12. (Doc. 50).

On September 17, 2021, Debtor filed a Motion to Modify Chapter 13 Plan Post Confirmation. (Doc. 51). In the motion, Debtor acknowledged receipt of the $16,788.26 in settlement proceeds that should have been paid over to the Trustee. After exempting $6,490.00, the total amount due to the Trustee for the benefit of unsecured creditors from the settlement proceeds is $10,298.26. In an effort to make the estate whole, Debtor has proposed to increase the "POT" amount by $11,000.00. After factoring in the previously confirmed "POT" amount of $5,075.00, the total amount Debtor has proposed to pay to unsecured creditors is $16,075.00. Debtor has further proposed to immediately pay $1,000.00 to the Trustee, leaving the remaining $15,075.00 to be paid to the Trustee through the plan. On October 8, 2021, Trustee filed an objection to the plan modification and requested the motion be ruled on along with the Trustee's Motion to Dismiss and Motion to Examine Transactions. (Doc. 65).

On September 28, 2021, Debtor filed an Application to Employ Special Counsel, *Nunc Pro Tunc*, requesting to employ Harrelson of the Shunnarah Firm *nunc pro tunc* to December 21, 2020. (Doc. 52). Simultaneously with the application seeking employment, Harrelson filed a Motion to Approve Settlement of Debtor's personal injury cause of action in the amount of $40,000.00 and an Application for Approval of Attorney Fees and Expenses, requesting approval of $13,333.33 in attorney fees and $165.96 in expenses. (Docs. 53 & 54). The Bankruptcy Administrator and Trustee object to the request to employ *nunc pro tunc*, the motion to approve, and the application for fees and expenses. (Docs. 70 & 71). Both the Bankruptcy Administrator and Trustee allege the Shunnarah Firm has continuously entered into settlements on behalf of debtors and disbursed funds in bankruptcy cases without court approval.[1] (Docs. 70 & 71).

At the September 20, 2021 hearing, Debtor's personal injury attorney, Harrelson admitted he never conducted a PACER search to verify whether or not Debtor was in an active bankruptcy case. Following the hearing, the Court ordered the Chapter 13 Trustee, Debtor's bankruptcy counsel, and Debtor's personal injury attorney to file "all communications made in an effort to ensure any settlement funds would be paid over to the Chapter 13 Trustee in compliance with Debtor's confirmed plan." (Doc. 63). In response, correspondence was filed to establish the following communication timeline:

- December 8, 2020 - Debtor amended his plan to disclose the pending personal injury claim and to provide that any unexempt proceeds from the settlement would be paid to the Trustee for the benefit of unsecured creditors.
- December 21, 2020 – Trustee mailed a letter to Debtor's bankruptcy counsel requesting contact information for Debtor's personal injury attorney.
- June 21, 2021 – Trustee mailed a 2nd letter to Debtor's bankruptcy counsel requesting contact information for Debtor's personal injury attorney.

---

[1] The objections included a non-exhaustive list of other cases in the Middle District of Alabama wherein the Shunnarah Firm has disbursed settlement funds to a debtor in an active bankruptcy case.

-4-

- July 2021 – Debtor notified bankruptcy counsel that he had retained the Shunnarah Firm to assist with his personal injury claim. At that time, Debtor's bankruptcy counsel believed the matter was still pending.
- July 28, 2021 – Debtor's bankruptcy counsel sent an email to the Chapter 13 Trustee's office with the information for Debtor's personal injury attorney.
- July 28, 2021 – Trustee mailed a letter to the Shunnarah Firm.
- July 29, 2021 – Attorney Paul Esco mailed a letter to the Shunnarah Firm to notify them of Debtor's active bankruptcy case and to discuss filing the appropriate pleadings in the bankruptcy case regarding their representation of Debtor in the personal injury claim.
- August 6, 2021 –Attorney Harrelson with the Shunnarah Firm called the Trustee to notify her that the personal injury claim of Debtor was settled in June 2021 for $40,000.00 and proceeds in the amount of $16,788.26 had been disbursed to Debtor.

(Docs. 72, 73, & 74). Debtor's bankruptcy counsel also noted in his response that he believed he would also be representing Debtor in any personal injury action and was waiting on Debtor's decision regarding the representation. (Doc. 74). Following the November 18, 2021 hearing on Trustee's Motion to Dismiss, the parties submitted briefs for the Court's consideration. (Docs. 82, 83, & 84).

## II.  Law

### A.  Jurisdiction

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(b) and the District Court's General Order of Reference date April 25, 1985. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (E), & (L). This is a final order.

### B.  Conversion of Estate Property

The settlement funds which were the proceeds of the personal injury claim is property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) and 11 U.S.C. § 1306(a)(1) (Property of the

estate includes ". . . all legal or equitable interests of the debtor in property as of the commencement of the case. . ." and "all property . . . the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted. . . ."); *see also In re Graham*, 258 B.R. 286, 288 (Bankr. M.D. Fla. 2001) ("Proceeds received postpetition by a debtor on account of a prepetition or postpetition personal injury claim are property of the estate pursuant to § 541 and § 1306."). The accident giving rise to the personal injury claim occurred in December 2020, after the commencement of the case.

Pursuant to the terms of Debtor's confirmed plan, any funds received from the personal injury claim, less Debtor's exemption, were to be paid over to the Chapter 13 Trustee for the benefit of unsecured creditors. Instead, following the settlement of the claim, proceeds in the amount of $16,788.26 were disbursed by Harrelson, the personal injury lawyer, to Debtor without the Trustee's knowledge. The disbursement of the funds to Debtor resulted in the conversion of estate property. *See* 11 U.S.C. § 1306(a).

### C. The Application to Employ Special Counsel, *Nunc Pro Tunc*, is Denied; The Motion to Approve Settlement is Granted in Part; and The Application to Approve Attorney Fees and Expenses is Denied.

The question that is the crux of this decision is who bears the responsibility of ensuring the proceeds, as property of the estate, are properly turned over to the Chapter 13 Trustee in accordance with Debtor's confirmed plan. Based on the timeline of communication between Debtor, Debtor's bankruptcy counsel, Debtor's personal injury attorney, and the Chapter 13 Trustee, by the time the Chapter 13 Trustee and Debtor's bankruptcy counsel were made aware that the Shunnarah Firm was representing Debtor, the personal injury claim had already been

-6-

settled and funds totaling $16,788.26 had been disbursed to Debtor. There is no evidence that Harrelson knew of the Debtor's bankruptcy filing at the time he disbursed the net proceeds to the Debtor. While there seems to be an overall lack of communication between Debtor, Debtor's bankruptcy counsel, and Debtor's personal injury attorney, in this Court's view, the conversion of estate property could have been prevented by Harrelson and the Shunnarah Firm completing a simple PACER check before disbursing any settlement funds. Going a step farther, had Harrelson completed a PACER check at the outset of his representation, he would have learned of the bankruptcy case and could have timely filed the appropriate motions with the Court.

The bankruptcy court in the Southern District of Alabama recently considered a similar case in *In re Fisher*, No. 16-1911, 2019 WL 1875366, (Bankr. S.D. Ala. Mar. 27, 2019). In *Fisher*, the debtor's personal injury attorney settled a lawsuit without first seeking court approval of his employment, the settlement, or his attorney fees. *Id.* at *1. The personal injury attorney informed the court that he relied solely on the debtor's signed settlement memorandum containing a statement that the debtor was not in bankruptcy to confirm without any further checking. *Id.* at *2. The court found the attorney's exclusive reliance on this statement was "wholly inadequate." *Id.* The *Fisher* Court noted as follows:

> The question of whether a plaintiff is in bankruptcy is thus very significant. Every trial attorney has or should have a PACER account with which to check federal court pleadings, including bankruptcy court pleadings. It takes only a few moments to check a client's name on PACER before distributing settlement proceeds to determine whether that client is in bankruptcy. To rely on a client's representation that he or she is not in bankruptcy is not enough. The client may not notice or understand the "not in bankruptcy" language; the client may be confused as to whether he or she is in bankruptcy; and (not surprisingly) sometimes clients will lie, particularly if they think that answering correctly may cause them to get less money. In this court's view, if a lawyer fails to check PACER to confirm that a client is not in bankruptcy immediately before distributing settlement proceeds, the lawyer runs the risk of being held liable for

the settlement funds that would have otherwise gone into the bankruptcy estate. Of course, a prudent lawyer should also check PACER upon initial retention as well so that his or her employment can be approved by the bankruptcy court on a timely basis.

*Id.* The Court finds the reasoning of the Bankruptcy Court in the Southern District of Alabama persuasive. In *In re Billy Jack Smith II*, 538 B.R. 867 (Bankr. M.D. Ala. 2015), this Court sanctioned special counsel for failing to communicate with debtor's bankruptcy counsel and the trustee and for failing to file the appropriate documentation for court approval that resulted in the conversion of settlement proceeds. The Court, in its decision, noted

> When a civil attorney initiates representation of a client, it is a good idea to check PACER to see if the client or any opposing party is in bankruptcy. At a minimum, a civil attorney undertaking representation of a new client should ask the client if he is in bankruptcy. Upon learning that a client is in bankruptcy, a civil attorney should contact the client's bankruptcy attorney and the bankruptcy trustee to see if he or she has any pertinent obligations.

*Id. at* 874.

Similarly, Harrelson and the Shunnarah Firm paid the settlement proceeds to Debtor without prior court approval. Had Harrelson conducted a PACER search at the outset of his representation or, at a minimum, prior to disbursing the settlement funds, he would have discovered the active bankruptcy case. Instead, Harrelson's actions – or inactions – directly resulted in the conversion of estate property. It is true that Debtor is partially to blame for failing to either inform bankruptcy counsel that Harrelson with the Shunnarah Firm was representing him in the personal injury claim or inform Harrelson that Debtor was in an active bankruptcy case. However, it is not uncommon for a debtor to not understand the legal system and the ramifications of failing to disclose a bankruptcy case to a personal injury attorney. Rather, it is the responsibility of the attorneys involved to do their due diligence when representing a client,

especially when the result of that representation involves thousands of dollars being paid over to the client, potentially in error.

Because of Harrelson's failure to check PACER and Debtor's failure to properly disclose the bankruptcy case to the Shunnarah Firm, the personal injury claim, an asset of the bankruptcy estate, was settled without court approval as required under 11 U.S.C. § 363(b) and Rule 9019. Not only did the Shunnarah Firm fail to obtain court approval of the settlement, but also Harrelson and the Shunnarah Firm failed to seek approval of his employment as special counsel for debtor as required by 11 U.S.C. § 327 or to have any attorney fees and expenses approved as required by 11 U.S.C. § 330. Only now, after the case has settled, funds have been converted, and the Trustee has moved for dismissal and to examine transactions has the appropriate documentation been filed with the Court.

Harrelson and the Shunnarah Firm seek employment *nunc pro tunc* to December 21, 2020. The Supreme Court has cautioned against using n*unc pro tunc* orders to create revisionist history to show as fact something that never occurred. *Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020) (per curiam) (citing *U.S. v. Gillespie*, 666 F.Supp. 1137, 1139 (N.D. Ill. 1987)). Instead, *nunc pro tunc* orders may be used to "'reflect the reality' of what has already occurred." *Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. at 699-701 (citation omitted). While some bankruptcy courts have disallowed *nunc pro tunc* employment orders, other bankruptcy courts have determined *nunc pro tunc* employment orders are permissible where the movant can show the professional seeking employment would have been qualified for appointment and excusable neglect for failing to file a timely application. *In re Fisher*, 2019 WL 1875366 *2 (citations omitted). To find excusable neglect, the Court

-9-

considers other circumstances surrounding the omission or negligence, including "prejudice to the debtor, the length of the delay and the potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

This is the first instance of Harrelson and the Shunnarah Firm seeking employment in this case. Should the Court deem retroactive employment permissible, Harrelson and the Shunnarah Firm have nevertheless failed to carry their burden of showing its failure to timely seek employment was sufficiently excusable. The necessity for a *nunc pro tunc* order could have been prevented by Harrelson simply running a PACER search at the beginning of his representation. Had he done so, he could have immediately sought court approval for his employment. Then, he would have known to file the motion to approve and application for attorney fees and await court approval and instructions on disbursing proceeds. Instead, the application for employment was filed two months after becoming aware of the bankruptcy case. At that time, it had been nine months since the events giving rise to the personal injury claim and three months since the claim was settled and proceeds were disbursed to Debtor. Unfortunately, the estate proceeds in the amount of $10,298.26, which amount represents the settlement disbursement to Debtor less Debtor's exemptions, were already converted. Based upon these factors, the Court finds Harrelson and the Shunnarah Firm have failed to demonstrate excusable neglect to justify the untimely application. As such, *nunc pro tunc* relief is not warranted. Accordingly, the application to employ *nunc pro tunc* is denied.

Because the employment is not approved by the Court, any fees and expenses requested in connection with the representation of Debtor in the personal injury action are likewise not

approved.  Therefore, the application for approval of attorney fees and expenses is denied, and the fees and expenses totaling $13,499.29 paid to the Shunnarah Firm shall be paid to the Chapter 13 Trustee to pay the unsecured creditors.  As there is no objection to the settlement *per se*, rather the objection is the payment of attorney's fees and the manner in which the litigation proceeds were disbursed, the motion to approve settlement in the amount of $40,000.00 is granted, insofar as the settlement and release involving the Defendant in the personal injury suit is concerned. However, the requested attorney's fees and expenses are denied.

### D. Debtor's Motion to Modify Chapter 13 Plan Post Confirmation is Granted.

In an effort to repay the bankruptcy estate for the converted funds, Debtor has filed a motion to modify the plan.  Debtor received $16,788.26 from the settlement proceeds, of which Debtor is able to exempt $6,490.00.  That leaves $10,298.26 that should have been paid over to the Chapter 13 Trustee.  Debtor's proposed modified plan increases the "POT" amount by $11,000.00 to account for the converted funds, making the total amount to be paid to unsecured creditors $16,075.00.  To "sweeten the deal," Debtor proposes to immediately pay $1,000.00 over to the Trustee, leaving the remaining "POT" amount of $15,075.00 to be paid through the plan.

As the Court noted in Part II.C. above, Debtor bears some of the responsibility for failing to communicate with his bankruptcy attorney and personal injury attorney about the status of the personal injury claim.  Furthermore, Debtor knew or should have known the proceeds he received from the settlement disbursement had been pledged to his unsecured creditors by way of his confirmed plan.

-11-

11 U.S.C. § 1329(a)(1) provides that "any time after confirmation of the plan . . . the plan may be modified, upon request of the debtor, . . . to increase or reduce the amount of payments on claims of a particular class provided for by the plan; . . . ." Debtor is not required show a change of circumstances in order to modify the plan. *See In re Guillen*, 972 F.3d 1221, 1229-30 (11th Cir. 2020) (holding that when a modified plan satisfies the requirements of § 1329, the bankruptcy court may consider whether there has been a change in circumstances to warrant modification, but may modify regardless of whether any change in circumstances exists); *In re Thomas*, 291 B.R. 189, 193 (Bankr. M.D. Ala. 2003) (holding that plan modification is allowed when the statutory requirements have been satisfied and does not require a showing of change in circumstances).

Debtor is proposing to modify the plan to increase the "POT" to unsecured creditors, albeit the motivation for doing so is to repay the estate the converted funds. Nevertheless, Debtor's proposed modified plan satisfies the requirements of § 1329. The Court recognizes Debtor's efforts to make the estate whole after the conversion of the funds. Furthermore, the Court agrees that Debtor should not be allowed to receive the benefit of Harrelson and the Shunnarah Firm's error in disbursing the proceeds to Debtor that were pledged to the estate. Accordingly, the motion to modify is granted. However, as noted in Part II.F.4. below, further plan modification may be required.

### E. Trustee's Motion to Dismiss with Prejudice and Bar to Refiling is Denied Without Prejudice.

The Chapter 13 Trustee requests dismissal of this case with prejudice and a bar against refiling. Under 11 U.S.C. § 1307(c)(6), a Chapter 13 may be dismissed due to a "material fault

by the debtor with respect to a term of a confirmed plan." Debtor's confirmed Chapter 13 plan pledged the proceeds from the personal injury claim to be paid over to the Trustee for the benefit of Debtor's unsecured creditors. Instead, after the claim was settled, $16,788.26 was disbursed to Debtor and Debtor no longer has the proceeds. As such, dismissal is warranted under § 1307(c)(6) due to Debtor's actions in this case. However, even though the Bankruptcy Code supports dismissal, the Court is not required to dismiss the case.

Rather, the Court recognizes Debtor's attempts to make the estate whole by proposing a modified plan that proposes to repay the converted funds to the bankruptcy estate. The Court is satisfied that Debtor is acting in good faith and, as set forth in Part II.D. above, finds the motion to modify is due to be granted.

The Court's hope is that Debtor is sincere in his efforts to complete the modified plan and obtain a discharge. However, the Court is not naïve to the gamesmanship of some debtors. Should the Trustee later determine that Debtor is using this Court's decision as a way to subsequently dismiss his case and obtain a windfall of the converted funds without substantially repaying the estate, then the Court will allow the Trustee can bring the case before the Court to consider whether the case should be dismissed with prejudice pursuant to 11 U.S.C. § 349 or whether a bar against refiling should be imposed. Accordingly, Trustee's Motion to Dismiss is denied without prejudice.

-13-

**F. Personal Injury Lawyer Benjamin Harrelson of the Shannarah Firm Should Bear the Loss of the Conversion of Property of the Estate.**

**1.  The Estate Should Not Bear the Loss.**

The Court next must consider who is to bear the loss of the conversion of estate funds. There are four possible candidates: (1) Daryl McLemore, the Debtor; (2) Paul Esco, Debtor's bankruptcy counsel; (3) Benjamin Harrelson and the Shunnarah Firm, Debtor's personal injury lawyers; or (4) the estate.  At the outset, the Court will eliminate the estate, as it is the only totally innocent party here.  Chapter 13 Trustee Sabrina McKinney and her staff, who represent the estate, did everything reasonably possible to prevent this loss.

**2.  The Actions of Debtor's Bankruptcy Counsel, Paul Esco, Were Appropriate in this Case and He Should Not Bear the Loss.**

The Court will next consider Attorney Esco's potential responsibility here.  As Debtor's bankruptcy counsel, he has the most knowledge of what is to be done with the proceeds of the personal injury suit.  In this case, Esco modified the Chapter 13 Plan to provide for the payment of the proceeds to the estate.  (Docs. 23 & 27).  Moreover, he amended Debtor's schedules to disclose the existence of the claim.  (Doc. 44).  This Court has previously discussed what it expects of bankruptcy counsel in situations such as this – where a personal injury suit recovery is pledged to the Trustee under a Chapter 13 Plan.  *In re Smith*, 538 B.R. 867, 872-73 (Bankr. M.D. Ala. 2015).  Debtor's counsel is expected to counsel his client as to his responsibilities *vis a vis* any recovery, to properly disclose, with sufficient detail, the existence of the claim and the identity of any lawyers involved in the representation of the Debtor, including any necessary amendments to the schedules and making provisions in the plan.  Debtor's counsel is further

-14-

expected to facilitate communication between Debtor, personal injury suit counsel, and the Trustee, to make sure that the litigation proceeds are properly paid over to the Chapter 13 Trustee, for the benefit of the creditors. In this case, Esco amended the plan and the schedules. Insofar as the Court's record is concerned, Esco's actions were proper.

Debtor's counsel is expected to counsel his client to keep him advised of the progress of the personal injury suit so that any proceeds are paid over to the Trustee. Because that didn't happen here, on might question whether Esco properly counseled his client, or whether a properly counseled client willfully converted property of the estate, keeping Esco in the dark. Getting between a lawyer and his client is problematic, and the Court rarely if ever attempts to do so. Considering all of the attendant facts and circumstances, the Court has no reason to doubt that Esco properly counseled his client. The Court will conclude here, based upon indirect evidence, that Esco properly counseled his client.

Esco stated that, based upon prior discussions with Debtor, he expected Debtor to hire him to bring suit. Once the Debtor hired the Shunnarah Firm, he may have willfully kept Esco in the dark. Esco cannot be faulted for the failure to disclose that Debtor had hired Harrelson and the Shunnarah Firm. Moreover, because Esco had no advance knowledge that the personal injury claim had been settled and funds disbursed, he cannot be held responsible for the conversion of property of the estate.

-15-

### 3. Debtor's Personal Injury Lawyer Could Easily Have Discovered His Client's Bankruptcy Filing and His Law Firm Has Demonstrated a History of Disregard of the Requirements Imposed by Bankruptcy Law.

Debtor's personal injury lawyer, Harrelson, claims that Debtor did not tell him about the bankruptcy filing. Esco claims that Debtor did not tell him that he had hired Harrelson and the Shunnarah Firm to handle the personal injury suit. Later, Debtor argued that he did not understand what he was to do. If everyone's claims are accepted at face value, we have a quandary. The Court observes that Harrelson could have easily avoided the quandary had he checked PACER. One school of thought is that a loss should be borne by the one that could have most easily avoided it. If that rule is applied here, Harrelson bears the loss.

The Bankruptcy Administrator and the Trustee point out that the Shunnarah firm has been involved in a number of cases in the past where settlement funds were disbursed without court approval–to the detriment of the bankruptcy estate.

1. 15-32836 Kimmala Floyd

2. 15-33164 Andre and Guranita Milton

3. 17-10468 Cornelious Joseph McCallister, Jr.

4. 17-32061 Wendell Ellis

5. 17-81429 Latonya Moss

6. 18-31575 Jacqueline Denise Davison

7. 21-30403 Christmas Denard Jeffries (also citing 16-32876).

(Docs. 70-72). These cases were all resolved by payments from the personal injury attorney, the debtors, or some combination of the two. Harrelson makes no response to this allegation in his response.

-16-

To elaborate, in the Latonya Moss case, on March 15, 2019, the Court entered a Show Cause Order dealing with a problem, similar to the one here, where personal injury suit proceeds were paid to the debtor and not disclosed to the Court or the Trustee.[2]  (17-81429, Doc. 68).  In a footnote of the Show Cause Order, the Court stated, in part, as follows:

> Had Niedenthal [the personal injury lawyer] checked PACER he would have learned of his client's bankruptcy filing.  This Court has previously stated that 'when a civil attorney initiates representation of a client, it is a good idea to check PACER to see if the client or any opposing party is in bankruptcy.  At a minimum, a civil attorney undertaking representation of a new client should ask the client if he is in bankruptcy.'  *In re Smith*, 538 B.R. 867, 874 (Bankr. M.D. Ala. 2015) (Sawyer, B.J.) . . . The Court would nevertheless recommend lawyers conduct a PACER check–it is free and takes only a minute or so to perform.  At the March 13 hearing, Niedenthal was plainly angered at the actions taken by the Trustee.  The Court is of the view that Niedenthal's anger is misplaced . . .  The Trustee was performing her office, following up on possible assets.

(17-81429, Doc. 68, p. 2, n.1) (bracketed matter added).  In Moss, the debtor did not disclose to her personal injury lawyer, the existence of her bankruptcy filing and did not disclose her personal injury suit to her bankruptcy lawyer.[3]  When the Trustee made inquiries, the personal injury lawyer became angry, not with the debtor for converting funds which were the property of the estate, but rather with the Trustee for raising the uncomfortable matter of the conversion of property of the estate.  As demonstrated by the Trustee, and not disputed by Harrelson, the Shunnarah Firm has a history in this Court of representing debtors that convert personal injury suit proceeds to their own use, contrary to the requirements of their Chapter 13 Plan or the bankruptcy laws.  The fact that this conversion of estate property by debtors happens

---

[2]  There is a slight difference in the factual setting.  In Moss, the personal injury suit was not disclosed by the debtor.  In McLemore, the case at bar, Debtor disclosed the suit, amended his Chapter 13 Plan to pay the proceeds over to the estate, but nevertheless, converted the proceeds by not telling the the personal injury lawyer-Harrelson–of his Chapter 13 case and his obligation to pay the funds over to the Trustee.

[3]  The Show Cause Order cited above was authored by the undersigned.  Moreover, the lawyer targeted was with the Shunnarah law firm.  One wonders how many times the Court should be required to go through this exercise.

so often to the Shunnarah Firm raises the question of whether they are winking at their client's wrongdoing.

Harrelson makes a surprising argument in his brief that the Court will address here. Harrelson argues that:

> The Trustee admits to having collected over $2.7 million dollars in lawsuit proceeds in 2021. The Trustee is receiving the benefit of other attorneys' skill, hard work, and financial risk. With no authority to support her, the Trustee is suggesting to the Court to take earned income from one of those same attorneys and give it to her.

(Doc. 84).

To begin, the Trustee acts on behalf of the estate. 11 U.S.C. §§ 1302, 704. Harrelson's argument that the Trustee is enriching herself at his expense is absurd. Rather, she is recovering money that should have rightfully been paid to the creditors.

Harrelson's argument that there is no authority for what the Trustee is doing is without merit. The proceeds of the litigation in question were pledged by Debtor to the payment of his creditors under his confirmed plan. (Doc. 27). There is considerable support for the proposition that personal injury suit proceeds are property of the estate. Eg., *In re Waldron*, 536 F.3d 1239 (11th Cir. 2008); *McKinney v. Russell*, 567 B.R. 384 (M.D. Ala. 2017); *see also*, *D'Antignac v. Deere & Co.*, 604 Fed.Appx. 875 (11th Cir. 2015) (imposing judicial estoppel to bar undisclosed personal injury suit); *In re Smith*, 538 B.R. 867 (Bankr. M.D. Ala. 2015) (sanctioning lawyers by disgorging fees for converting estate property).

Having determined that Harrelson and the Shunnarah Firm should bear the loss, the next question is how much of the loss should they bear. At one end of the spectrum, the Court could simply reduce their attorney's fees. At the other end of the spectrum, the Court could require

-18-

them to reimburse the estate for the funds that they had a part in converting. The Court is of the view that it should order both disgorgement of attorney's fees and reimbursement of the estate. First, Harrelson could have easily avoided this problem by checking PACER. Second, the Shunnarah Firm has a well-established history of converting estate property, to the benefit of its clients and to the detriment of bankruptcy estates. Third, given the tenor of Harrelson's brief, it is apparent that he does not take this seriously as evidenced by him attacking the Trustee and accusing her of enriching herself at his expense. For these reasons, Harrelson and the Shunnarah Firm shall pay over to the Chapter 13 Trustee, the sum of $40,000.00, within 14 days of the date of this order.

### 4. Debtor's Plan Should be Amended to Make Sure that Debtor Pays as Much as He Can, Without Exceeding a 100% Payment to Unsecured Creditors.

As Debtor's plan now stands, he is only paying the minimum required for confirmation. Because the Court has ordered Harrelson to make the estate whole, additional funds are available. After the $40,000.00 to be paid by Harrelson is credited, the Trustee should calculate how much is necessary to pay the unsecured creditors in full. If necessary, the Trustee should amend the plan to require that amount to be paid over.

### III. Conclusion

The Court finds that property of the estate was converted when settlement proceeds in the amount of $16,788.26 were disbursed to Debtor, instead of being remitted to the Chapter 13 Trustee as provided for in Debtor's confirmed plan. Had Harrelson performed a PACER search at the outset of his representation of Debtor or prior to disbursing settlement funds to Debtor, he

-19-

would have been made aware of Debtor's active bankruptcy case.  But for Harrelson's failure to perform a PACER search, then Harrelson could have filed the appropriate employment documentation with the Court and sought Court approval before disbursing any funds upon settlement.  As such, the Court orders that the Application by Debtor to Employ Special Counsel, *Nunc Pro Tunc* (Doc. 52) is DENIED; the Motion to Approve Settlement (Doc. 53) is GRANTED in part, and the settlement is approved except for the requested attorney's fees and expenses; the Application for Approval of Attorney Fees and Expenses (Doc. 54) is DENIED and the Shunnarah Firm is directed to pay the sum of $40,000.00 to the Chapter 13 Trustee; Debtor's Motion to Modify Chapter 13 Plan Post Confirmation (Doc. 51) is GRANTED; Trustee's Motion to Dismiss with Prejudice and Bar to Refiling (Doc. 45) is DENIED without prejudice; and Trustee's Motion to Examine Transactions (Doc. 46) is GRANTED.  The Court will enter an order by way of a separate document.

Done this 7th day of February, 2022.

William R. Sawyer
United States Bankruptcy Judge

c:     Debtor
       Paul D. Esco, Attorney for Debtor
       Sabrina L. McKinney, Trustee
       Bankruptcy Administrator
       Benjamin E. Harrelson
       Alexander Shunnarah Injury Lawyers, P.C.